Thank you, Your Honor. Good morning. We raised six issues in our brief. Obviously, 20 minutes does not allow me to address all six, so I'm going to focus my comments this morning on three of the issues that were raised. The first is jurisdiction. The second is seizure and forfeiture of proceeds. And finally, the denial of due process, the government misconduct, and Brady violations. Did you raise that jurisdiction in the district court? No, ma'am. So isn't that a problem for you? I don't believe so. And the reason being that the Supreme Court has held that the issue is so important of an interested prosecutor, is so important that it is something that may be raised, is jurisdictional, may be raised at any time. What's the evidence that there was any involvement by the interested prosecutor? There's no direct evidence of any involvement by the specific prosecutor that was involved in the conflict, but there are two points I would bring to your attention in response to your question. The first is that the Department of Justice or the office itself, it's unclear from the record, determined that the conflict was such that the entire office should be recused. In terms of the specific lead prosecutor, there is an email that we mentioned in the brief where he specifically references Muriel Sullivan, who was the blood relative to Jim Crow. As far as Jim Crow specifically being involved, is there any evidence of that? Not that I can recall, no. Okay. Seems to me Fitzhugh is pretty controlling. I don't believe that Fitzhugh is controlling, Your Honor, and the reason being is that Fitzhugh deals with a procedural aspect, and what we are dealing with is that of an interested prosecutor. And the Supreme Court... But no, we're not dealing with an interested prosecutor. We're dealing with one person from the office who was not an interested prosecutor who was given a special assignment to another district. But he... No, he was given the assignment in this district. Holzhauser was from this district. But who was he... What district was he working for? The prosecuting district, right? Wasn't that Western Missouri? That was what is on the pleadings in that. The only problem with that is, of course, is that the US Attorney from the Western District of Missouri has no jurisdiction in the Eastern District. Well, where do you get that? Give me a Supreme Court case that says that. The statute, Judge, that appoints United States Attorneys specifically states that... I've sat in courts all over the country by designation in emergency situations. Why should the Department of Justice have any less flexibility? It doesn't have any less flexibility. Well, that's what they did. They designated a district... Prosecutors in another district to serve specially for prosecutors who have been recused. That's no different than me sitting in the Tenth Circuit, as I've done, or the Third Circuit, as I've done, when there was a recusal problem. There is a specific procedure in the Department of Justice when an office recuses itself completely. That procedure is that a special attorney is appointed by the Attorney General... And the Supreme Court case that says that's judicially reviewable? Pardon? Because Fitzhugh... You're talking procedure now. No. You distinguished Fitzhugh by saying it was a procedural case, and now you're saying that the Department of Justice didn't follow their procedures. This is a procedural case. I'm sorry if I were not clear. It is not a procedural case, Your Honor. What I was about to say was the Department of Justice can appoint a special prosecutor, but that person has to report directly to the Attorney General on the regulations of the Department of Justice or to his designee, or delegee, as they call it in the U.S. Attorney's Manual. There is nothing in the record... And your evidence that that wasn't done? Who would have the burden to prove that there was a failure? Under United States v. Mapelli from the Ninth District, when the authority of a prosecutor is challenged, the government has the burden of coming forward. I thought this was plain error review. There was no challenge. I mean, you can't get around these problems. I think we can, Your Honor, because the Supreme Court in Young v. United States makes it absolutely clear that this is the type of conflict. I didn't make the conflict. The Department of Justice or the U.S. Attorney's Office did. They said the entire office was to be recused, and then they turn around the Department and appoint a person that was recused. I'll give you, Your Honor, to ring the bell. And when you have a person that is interested, the Supreme Court said we have held that some errors are so fundamental and pervasive... I think you better address your other issues. All right. On the forfeiture, the warrant, number one, was defective on its face because it did not have the findings required by 21 U.S.C. 853 F. The Department cannot, pre-indictment, seize assets subject to forfeiture without notice and a hearing unless there is a finding by the magistrate that there is probable cause to believe that the assets will be forfeitable if the defendant is convicted. Now, how does one tell whether a warrant application is under 853 or under the law enforcement normal processes? Because there is a 853 calls for it, and there is a particular warrant form that was used for the House in this case, and it was an exhibit by the government that specifically sets forth the requirements that have to be made. But not for the office. Not for the office. They didn't. The office looked like a normal criminal law enforcement warrant application, right? It did. Okay. So now, when and how was this issue raised in the district court? It was raised in the motion to suppress the search from the office, absolutely. And the findings were adverse to you as to the reason, as to it's bona fide. That's correct. It was not a forfeiture warrant application was the finding, right? That's correct. But that's what they were searching for. What makes that clear error? That finding? Why would it be clear error, Judge? Because there was no finding whatsoever. The statute requires a finding. There was no finding. It doesn't require that finding if the government is not proceeding under 853. Well, if they're seizing assets- The argument is that they should have, right? Well, sure. As to the office. Yes. They didn't. No. Okay. And the finding was, they were applying for a warrant to search for evidence, contraband, and so forth. And that finding has to be reviewable for clear error, doesn't it? I don't believe so, no, Your Honor, because we've raised it. Well, have you got a case on that issue? Because this is a new one for me, where the government proceeds under one kind of warrant, and the defendant, after the fact, says you used the wrong form. No, I didn't. They used, they searched the office for evidence. No question about that. But they also went in with the intention to seize assets that were subject to forfeiture, and that is clear from the record, absolutely clear. As a matter of fact- Okay, so, and your best case on this mixed motive theory? The best case? Yeah, for you, that if they've got a mixed motive, the whole exercise is tainted. I do not have a case that says that if it's a mixed motive, it is tainted, because what has to be done is clear in the statute, it's just as clear as can be. The issue may be, what were they searching? Were they planning to seize assets? And like I said, the record is clear. The agent testified that they were trying to find what assets Mr. Sigillito bought with the ill-gotten gains. They had Elizabeth Stadahar obtain the personal articles declaration, which she said, listed all the assets that he purchased with the fruits of the crime, the money. And attachment A of the search warrant sought antique collectible books, maps, jewelry, and oriental rugs, and any other items purchased with investor funds. So, there is no question. That's both evidence and possible contraband. But what the- It's not contraband. The fruits of the crime is the money that they obtained from the BLP. Nobody traded or bartered books, rugs, or antiques. Proceeds? They are proceeds, which is what is forfeitable. It's also chargeable under the money laundering statutes, depending on the circumstances, isn't it? No, because, well, it wouldn't be chargeable, no, because it's the money that he- This is the investigative stage. They don't have to have all of their charges lined up. No, they don't, but they might have taken more than 48 hours after first hearing of the case to obtain some information and some investigative techniques, and I suggest to the court that that alone is evidence that the US Attorney's Office, before it was recused, moved on the basis of this conflict. Exactly at what point was it recused? It was recused in, I believe, late June of 2010, some five to six weeks, I believe, after the search and after Mr. Holzhauser had already been designated the lead prosecutor. So when the office was recused, the office,  And so he should have been recused at that time, because the entire office was. And it was the Department of Justice that made the determination that he had a conflict. And from that point on, young rules. Now, turning finally to, in the forfeiture issue, to the case of Southern Union. In the court below, the district court entered a forfeiture order, money judgment, a forfeiture of $51 million, which she determined was the amount of the loss. Now, she made that determination on judge found facts in connection with the sentencing process. And that was the amount of the forfeiture. Under Southern Union versus United States, that is a violation of Apprendi. The Supreme Court specifically held that when the maximum amount of punishment is to be determined by some fact, that fact must be determined by the jury. And this would include, in Southern Union, of course, it was the duration of the statutory violation, because it was a daily fine. But the court went on to say, under other statutes, it's the amount of the defendant's gain or the victim's loss or some other factor, in all such cases requiring juries to find beyond a reasonable doubt. Facts that determine, excuse me, that determine beyond a reasonable doubt, the fine's maximum amount is necessary to implement Apprendi. Now, hypothetically, should this be the only issue on which you prevail? What would be the appropriate- No, I'm not going to say this should be the only issue, Judge. But go ahead, I'm sorry. I said hypothetically, if this were the only issue on which you were to prevail, what would be the appropriate disposition by this court? A new trial. And the reason- A new trial? Absolutely. This was all, none of this came up until sentencing. I mean, the jury was excluded from- You cannot have a forfeiture of goods, which by the way, before there was an order of forfeiture, where parade was paraded before the jury, and observed by the jury prior to their deliberations. But putting that aside for the moment, what if the jury determined that the amount, the maximum amount that should be forfeited is $25,000? The jury had been- Doesn't affect anything else. Sure it does, because what it does affect is the amount of money that was alleged to the jury to have been spent by Sigilito. My understanding, and it's limited, because I wasn't a criminal practitioner, but it seems to me that records I've seen, forfeiture issues that are submitted to a jury, typically specific property to be forfeited, are done so in a bifurcated proceeding. Isn't that right? Yeah, by a preponderance of the evidence. So now if Southern Union and Apprendi say that money judgment forfeiture issues, as well as specific property issues, are for a jury, why would that be any less, why would a split trial be any less appropriate? For example, in Southern Union, the verdict of the jury could have rested on one day of a violation. And so it was up to the jury to determine, and the jury would have to determine, well, how many days was a violation? I understand that, but I'm looking at this case. He was convicted of a Ponzi fraud. The amount of the loss is not going to be put in jeopardy by the forfeiture ruling any more than it would be by a restitution ruling. So I don't see how a complete new trial on guilt is appropriate. Well, under forfeiture, the maximum to be determined is not more, under 21 U.S.C. 853A, is no more than twice the gross profits or other proceeds, not the amount of loss. So the determination by the jury has to be what the gross proceeds are. And what if they said it was $50,000 and the amount of property the government was seeking to forfeit and was forfeited by the judge was $100,000? You have to have a new trial for the jury to determine what amount is to be forfeited. I'm talking about guilt. When you say a complete new trial, are you talking, I'm just- Because it has to be determined by a jury beyond a reasonable guess. But you can, why wouldn't the appropriate disposition, if the government chose to pursue it, be a bifurcated trial, jury trial, on the amount of the forfeiture money judgment? We'd have to basically retry the entire case anyway. Well, that's for the lawyers to decide and the judge to control, right? No, I- I don't understand why this issue could conceivably warrant a new trial on the guilt phase. Because I believe, among other things, that is what was required under Southern Union. Okay. What was your, you said you had three main points. Well, the last point had to do with the due process argument that we had made in the brief. But along those lines, my time is slipping away here rapidly. But we filed a motion for a new trial based upon newly discovered evidence, while this case was pending in this court, before the district court, as we were required to do. At the government's urging, Judge Reed deferred the consideration of that matter until after this appeal. I have filed a motion to remand for the purpose of having a hearing on that motion. Because what if the motion was supported by emails and affidavits, or not executed, but agreement to affidavits, by the brother of Mary O'Sullivan, that among other things indicated that she lied on the stand, that she had a very close relationship with Crow, and that Mary O'Sullivan told her brother that she had discussed investing in the BLP and Sid Gelito with Mr. Crow. And that he said that Sid Gelito was reputable and BLP was legit. That is material that was hidden from us, or not disclosed. And as a matter of fact, hidden, because O'Sullivan says he told that to the agent, Cosentino, when he was interviewed. And Cosentino's 302 doesn't have a mention of any of that. And two days after the interview of Tom O'Sullivan, the government files a motion to preclude my cross-examination of Mary O'Sullivan on her relationship to Crow, which the judge granted. Thank you. In what section of your brief is that argument outlined, that you just gave? That is in section four. Thank you. If there's no other immediate questions, I'll save my one minute for rebuttal. Let's see, Mr. Michelson? Yes, may it please the court, counsel? My name is Jess Michelson, and I was designated and authorized by the United States Attorney General in this case, and the Department of Justice, to handle this prosecution, as were my co-counsel, Mr. Richard Finneran, and former co-counsel, Stephen Holzhauser, who's now retired after over 30 years of government service. As was the United States Attorney for the Western District of Missouri, to handle this prosecution. The defendant has forfeited any claims by failing to properly preserve any issue about disqualification or conflicts of any attorneys in this case, but I can assure you that all the attorneys that were properly authorized and designated by the Attorney General in this case to handle this matter had no conflicts. And the defendant continues to want to raise some issues about the recusal matter in this case, but is not properly before this court. And as this court's recognized, Fitzhugh is controlling, because this matter is not a jurisdictional matter, and he did actually forfeit it and waive any argument here before the Court of Appeals by waiting until his opening brief to actually raise any potential issue, as he believes it, to which the government states there is no issue. So how much of a role did Holzhausen, if that's his name, have? Your Honor, the United States Attorney for the Western District of Missouri designated myself as lead counsel in this case. I worked closely with Mr. Holzhauser and Mr. Finneran. We split probably the actual trial, probably about 50-50, but the government, in this case, went to extensive measures to wall off any potential individuals who weren't properly authorized from accessing any information in this case. Who were the attorneys at the time of acquiring the search warrant? At the time of acquiring the search warrant, Your Honor, I believe it was the first assistant U.S. attorney here in the Eastern District of Missouri. But it was Eastern District of Missouri attorneys, and it was not Mr. Crow. He did not play a role in that at that time. But the reason we're here today is because the appellant has challenged the jury's findings of guilt and guilty verdicts in this case, finding the defendant guilty of defrauding nearly 150 investors out of over $50 million during a fraudulent investment scheme that he operated for nearly 10 years, referred to as the British Lending Program, or the BLP. The jury in this case heard overwhelming evidence of the defendant's guilt during the course of a four-week-long trial. That overwhelming evidence consisted of many victims, over 20 victims who actually testified at the time of trial in this case. And those victims testified about the same misrepresentations that Mr. Sigillito made to them in order to get them to part with their money. And in order, in the methods that he went to, in which he abused their trust that they had placed in him as an attorney, as a bishop, and as a very close friend that he actually was to many of the victims. In this case, they heard also from recruiters in this case who also heard the similar misrepresentations made by Mr. Sigillito regarding what he claimed to be the British Lending Program. Those misrepresentations primarily being about three central categories, those being whether or not Mr. Sigillito was actually taking fees, and his co-conspirators in this case took substantial fees to which the victims were- Let's talk about the issues that are argued this morning. Well, Your Honor, I- I believe your brief is fairly thorough on the evidence. All right, thank you, Your Honor. My point I wanted to make, though, was that the evidence in this case is so substantial that any potential errors that the defendant hasn't waived, to which most of them that we've pointed out in our briefs that the defendant actually has waived those by failure to properly make the timely objection- He didn't waive the warrant issues, and he didn't waive the forfeiture issues. So, you know, that's what we're talking about this morning. All right, Your Honor. Well, then, on the last point, then, I guess, and I appreciate the opportunity that you gave us to allow us to split our argument as Mr. Finneran handles the forfeiture argument, but I would like to make one last response to what Mr. Roller stated about his point of his new motion for new trial, which he's raised in the District of Court while this appeal is pending. That basis for his new motion for new trial is not raised anywhere in this current appeal before this court. This court actually ruled that that matter should be not combined with this brief at this time, and it should be allowed to be decided by the district court. And, therefore, that matter is not properly before the court to which he's raised here today. If there are no further questions, then, on- Why don't you briefly say what that matter is? His motion for new, his new motion for new trial? No. His new motion for new trial is basically triple hearsay of a potential cumulative impeachment issue on one victim. And so we've asked that that matter be stayed and be resolved and allow this appeal to proceed timely. If there are no additional questions on any of the, either the first issue, the jurisdiction of the prosecution in this case, or the alleged trial errors in this case, then I will cede the remainder of my time to Mr. Finneran to handle the forfeiture issues before the court. Mr. Finneran? Yes, Your Honor, thank you. And I'm going to be addressing primarily the second issue that Mr. Roller has raised in his argument relating to criminal forfeiture. And you hit the nail on the head, Your Honor, Judge Loken, on the first point about what warrant we got here. We did not get a warrant pursuant to 21 U.S.C. 853 on May 21st, 2010. And for that reason, there was no requirement that any 21 U.S.C. 853 findings either be included in the affidavit or made by the judge that issued the warrant. Instead, what we obtained was a conventional Rule 41 search and seizure warrant. As the district court noted, Mr. Roller appeared to be confused about this below and actually thought there were two warrants. But there was only one warrant, and that warrant, as Your Honor indicated, not only authorized the seizure of evidence, but also contraband and fruits of the crime. And the affidavit that supported that seizure warrant indicated that Mr. Sigillito had used investor funds to purchase numerous valuable items. And in fact, the attachment to the search and seizure warrant listed what some of those examples of those valuable items in the office were. Is that the attachment A that's referred to? Yes, Your Honor, the attachment A to the search and seizure warrant. And there's two attachment A's. There's an attachment A to the July 1 warrants, which lists a specific list of items that were sought from Mr. Sigillito's house. But there's also an attachment A to the search and seizure warrant, which was issued on May 21st, executed on May 24th, and was not a forfeiture seizure warrant. And so because of that, there was no need for those findings to be made. Even if there were such a need, that would not merit the remedy that Mr. Sigillito believes would be required. And most it would require the suppression of the evidence relating to that material. It would not mean the forfeiture has to go away, or that that property cannot be independently established to be subject to forfeiture later on. I'll turn then to the Southern Union issue that this court expressed some interest upon. And here, the court is actually not at liberty to make the decision that Mr. Roller would ask it to today. And that's because a prior case of the Supreme Court, Libretti against the United States, has already decided this very issue against Mr. Roller. Libretti says, and granted it was a- No, wait. If Libretti is good law, we have to follow. Yes, Your Honor. If Libretti has been overruled by the Supreme Court. Then you don't. Then we don't. Elaine makes it clear that Southern Union, and tacked on to Southern Union, makes it clear to me, Libretti's been overruled. Because Libretti had no analysis whatsoever except to cite MacMillan, right? Libretti, Your Honor, does have a- We can go, I mean, it's one line.  That's true, Your Honor. And concededly, Libretti relies upon the MacMillan sentencing factor element dichotomy that the court five years later rejects an apprendee. That gets us all the way to Southern Union, and as you said, INA, both of which say that for those purposes, a jury is required. But neither of those cases deals with forfeiture. And the Supreme Court has also said that unless a specific holding of the court has been directly overruled, lower courts are not at liberty to re-examine whether the foundations of a decision have been eroded by subsequent developments. Instead, this court should affirm on the basis of that original decision, and then allow the Supreme Court, if it takes cert in this or some other case, to revisit the issue. But if the court does feel the need to inquire further- Well, I'm not, until Elaine, the court in Southern Union, of course, they focused on Harris rather than MacMillan. Right. And so they've never come out and said that the sentencing factor dichotomy identified in MacMillan is totally invalid. No, they haven't. You're right, Your Honor. But Elaine makes it, I mean, I can't read Elaine any other way. Well, Your Honor, I think- Because, I mean, in fact, two or three of them in the separate opinions confirm that MacMillan as well as Harris are gone. But neither of them mentioned Libretti, Your Honor. And so since that case has not been overruled, it still is good law. How, I mean, we can never take their reasoning as crystal clear? We could, Your Honor, if they'd spoken specifically about forfeiture. But in fact, in the Southern Union case, Justice Breyer raised the issue of forfeiture in the oral argument in that case. And he got answers to those questions, but the opinions are devoid of any mention of that issue. And in fact, Booker, which is a later decision of the court after Apprendi, in that case, and Booker, but the court says that the rest of the Sentencing Reform Act suffers from, quote, no constitutional infirmity, CEG, and enlists a number of sections, including the section pertaining to criminal forfeiture. So even after the developments of Apprendi, the Supreme Court, in its majority in that case, expressed the opinion that forfeiture- Did it also cite fines? It did not, I don't recall, Your Honor, but I don't believe that it cited fines in that string citation. But moreover, the practice of the Supreme Court has not been to say, okay, Apprendi was decided, so now everything that the judge considers is out. Rather, they've gone step by step. And Southern Union was the step of looking at fines. There's another aspect to this that's quite troubling. Both of the two circuits that you cite that have been happy to stay with Libretti have said, well, in any event, there's no statutory max here. And so we don't have to worry about Apprendi. Flatly contrary to the Southern Union analysis. The Southern Union analysis said some statutes have number of days. Right. Some statutes put the max as based on the value of property in either case. Yes. Apprendi applies. Yes, Your Honor, and- So our sister circuits have been flat wrong, it seems to me, in reading Southern Union. Well, it's hard to- All of which makes this very, very difficult. Well, Your Honor, first of all, I agree the statutory maximum argument has maybe been treated too lightly by those other circuits. Too lightly? It's wrong. Well, I have to disagree with- It's wrong. I mean, they just, they didn't read Southern Union carefully. Well, Your Honor, there's one sense in which, as you identified earlier, forfeiture is different from a fine. A fine, we're looking at some sort of numerical maximum. The number of days times the daily fine equals a numerical maximum. We're talking about the forfeiture of specific property. The jury or the judge is not dealing with a maximum. That's what Southern Union said. You want me to go read you the lines? After they talk about number of days, they say other fines are based on the value of the wrong. True, the value of the property or the loss or whatever it might be. That's true. And Your Honor- That's what forfeiture is based, that's what the money judgment side of forfeiture is based on. That's true, Your Honor. All we're talking about is whether the government, which has to give the defendant a chance for a jury to speak out on whether specific property should be forfeited. Right. Also should get a jury trial for these horrendous money judgments that are just pulled out of thin air, as this one was. Well, Your Honor, I differ whether it was pulled out of thin air. We presented evidence to the district court that justified that amount based upon the loss in this case. The amount of fraud loss is clear, but you could never have gotten this much in restitution. Your Honor, there is a restitution order in this case. It's not 50 million because there's been credit for- To the victims. Yes, Your Honor, because- Otherwise, it's contrary to one of our recent cases. That's true, Your Honor, it did. Yes, you're right. Actual loss is all we look at in restitution. So this money judgment is, to the extent forfeiture is kind of the flip side of restitution, which is usually what the government talks about, this is just a bad number pulled out of the air, and I don't know why we should uphold it. Well, Your Honor, I don't know if there's been a challenge specifically to the calculation that the court made below, but that calculation was justified, because when we're looking at forfeiture and we're talking about proceeds, that is the interest of the government invests at the moment the defendant acquires it. If he then uses some of those proceeds to return back to the victims and perpetuate the scheme- You know, this all becomes an uncollectible money judgment, so DOJ can brag to Congress. The unreality of these things is frustrating and irritating, frankly. Well, Your Honor, I agree. In this case, it's very unlikely that we will ever recover the full $50 million. So why do you do this stuff? Well, because, Your Honor, we're statutorily authorized to do so, and in the event that- You don't brag about it. Not attempting to brag about it, Your Honor, but- For an off-the-books receivable. Right, but there are other cases, Your Honor, where we do have that receivable, and we begin to, or sometimes often do, satisfy that amount of money. Now, in this case, you're right. The fraud loss is so enormous, the defendant- If you had gone for the $6.2 million that this defendant put in his pocket, no jury would have disagreed, and no court would have disagreed if it wasn't a jury issue. And that's possible, Your Honor, but the statute does not require us to simply go towards an individual's gain. Rather, it's what the proceeds of the offense as a whole were, and that's what the number we provided to the district court was. Well, that's why we need juries on these issues. Well, Your Honor, the other point I'll make on that jury issue, and I've actually cited the court to an article that I co-authored with a colleague of mine relating to this very question. And the full citation is not in the brief because it was not published then, but now it has been, and that's at 35 Cardozo Law Review, page one. And the argument that we make in that article is that, I understand your concerns about the statutory maximum argument, but the argument we make in that article actually deals with what the history of forfeiture was at common law. And whether there was any historical tradition of juries participating in the imposition of criminal forfeitures. And that's the sort of analysis the court is engaged in, in those recent cases of Southern Union and ICE. And what we found, looking at a great mountain of historical evidence that I could not cite to the court other than to refer it to this article. It's fairly clear that the jury had no role at common law. Was most of the mountain maritime and admiralty? No, Your Honor. Primarily what we looked at was historical information, statutory information from the American colonies, commentators from England including Blackstone and others who all talked about what the common law of forfeiture entailed. And what the conclusion from that was, was that in fact, the jury had no role in addressing what of the defendant's property would be forfeited. Instead, that was left to the court. And so, since there wasn't a historical tradition of forfeiture being a jury issue, that's what the Supreme Court said in Southern Union, in ICE, these other cases, is the reason that we have the Apprenti Rule is to protect the historical meaning of the phrase trial by jury in the Sixth Amendment. So is that why you think the Supreme Court would not overrule the Brady? Yes, Your Honor. Ultimately, I think the Supreme Court is likely to use that rationale as opposed to the statutory maximum rationale that Judge Logan has called into question. I think that's the sort of analysis that the Supreme Court has engaged in and the one that it is likely to engage in when it adjudicates this issue in this case or in another case. And I encourage the court to look at that opinion, or that article rather, if it does have issues or concerns about whether or not the Brady still is controlling law. So that was the Cardozo Law Review, what volume? 35, the 35th volume of the Cardozo Law Review begins on the first page. So, Your Honors, the reason that we ask the court to affirm this forfeiture is because, also I should mention that Mr. Roller here waived the jury trial right, which he has a statutory procedural jury trial right on specific property, as Judge Logan indicated. Yeah, but not on the money judgment. Not on the money judgment, you're right. So if we separate those two issues, he's also, as I understand it, challenging the forfeiture of all the specific assets that were forfeited in this case. Now, at least from a statutory standpoint, he waived that right already. And this court has previously recognized that the waiver of that statutory right implicitly also waives any later raised Apprendi or Blakely error. Now, those cases were decided before Southern Union, but the principle should be the same. If he wanted to raise an issue relating to whether the jury needed to find the forfeiture, he- Now wait, because he waived a right he had by statute or rule. He therefore implicitly waived the argument that he should have a right under the constitutional right? That's a pretty big reach. You'll never get me there. Well, this court has said so in two prior cases, which are cited in a footnote in our brief. The district court here did not choose to resolve the issue on that basis, partly for the reason that you're suggesting, that she didn't think that it extended to the money judgment issue. Because that obviously did not include, there was no statutory right to that. So she instead resolved it on the ground of Libretti and the statutory maximum. We did present to her a historical argument, which at that point was not as fully developed as it is in the article that I then prepared later on. But she did not address that argument below. So if the court feels the need to reach that issue, I'd encourage it to review that evidence in making its decision. If there are no other further questions on the forfeiture issue, I will rest our case on the briefs. Thank you. Thank you. Mr. Roller has- Council has one minute for rebuttal. I would refer the court to our reply brief in connection with this issue about the search warrant. I believe that this was an after the fact argument made by the government to try and save what was otherwise a bad search. We didn't waive anything in terms of that search and the assets taken from that search. As far as Libretti is concerned, I'd like to talk about that because Judge Loken and I actually agree on that. But on Libretti, you don't have to overrule Libretti anyway, because the defendant in his plea agreement agreed to the forfeiture and agreed to the items to be forfeited. Apprendi says it refers not only to facts to be found by the jury, but what the defendant has admitted. So Libretti does not deal with this. And if it does, I agree with Judge Loken that Allian has dispensed with any question about Libretti still being good law. And as far as splitting Mr. Michelson being lead counsel, and that things were split 50-50. He was obviously in a different courtroom than I was. And this can be resolved, I suppose, by looking at who put on the key witnesses, how many witnesses were on, and who the judge referenced all questions to in connection with the case. That just isn't true. Thank you. Thank you, counsel. You've argued well on a lot of issues in a short period of time, and we appreciate the assistance. It's a complex case, and we will take it under advisement.